IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| C.W. and DEVLON R., Individually and as Parent and Next Friend of C.W., | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 11-CV-2349 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| Board of Education of the City of Chicago, District 299, | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs C.W. and his parents, C.W. and Devlon R., filed suit against Defendant Board of Education of the City of Chicago, District 299 ("the Board") pursuant to 20 U.S.C. § 1415(i)(3), seeking attorneys fees and costs incurred by Plaintiffs as a result of a due process hearing brought pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. Plaintiffs maintain that the hearing provided substantial relief regarding improvements in the student's IEP and compensatory education services. Defendant admits that Plaintiffs are prevailing parties but denies that all of Plaintiffs' fees are reasonable. Plaintiffs have moved for summary judgment [17] on the request for fees and costs in the amount of $112,319.77. Defendant contends that Plaintiffs fees should be reduced to $93,812.52. For the reasons set forth below, Plaintiffs' motion [17] is granted in part and denied in part.

**I.    Background**

At the time of his due process hearing, C.W. was an eleven-year-old who attended fifth grade at a Chicago Public School in District 299. The Board is the relevant local education

agency as defined in 20 U.S.C. § 1402(15). During the school years from 2004 through the date of the hearing in July 2010, C.W. attended Reavis Elementary School.

During 2003 or 2004, when C.W. was in pre-kindergarten, C.W.'s mother observed academic delays and requested that CPS conduct a full and individual evaluation. An initial referral for an evaluation was made in January 2004. Second and third referrals for evaluations were made in September 2004 and May 2005. C.W. was found eligible to receive special education services in February 2006, when he was in first grade. His initial IEP listed his impairments as a learning disability and speech/language impairment. C.W.'s mother, Devlon, repeatedly asserted that the District's program and placement were not meeting her child's educational needs. Devlon retained Veena Gurshani, Elizabeth Walker, and Sarah O'Connor of Health & Disability Advocates, Inc. (HDA) to represent her and C.W.'s interests in September 2009. Elizabeth Walker was the principal attorney at HDA until she went on maternity leave and Sarah O'Connor became the principal attorney. Veena Gursahani worked under the supervision of Elizabeth Walker and Sarah O'Connor. Devlon also retained Mauk & O'Connor LLP as co-counsel, and Sarah E. Mauk undertook role of lead attorney in this case.

On February 17, 2010, Devlon filed a request for a due process hearing to redress violations of the Individuals with Disability Act (IDEA). An interim order was issued on June 19, 2010, ordering the initiation and completion of Independent Educational Evaluations ("IEEs") of C.W. at the District's expense. IEEs were conducted in the areas of psychological evaluation (Dr. Carol Jansson, Ph.D.), speech/language and assistive technology evaluation (Dr. Janet Marsden-Johnson, Ph.D.), occupational therapy (Ms. Mary Block), and central auditory processing disorders evaluation (CAPD) (Dr. Jeananne Ferre, Ph.D.). Prior to the start of the hearing on July 26, 2010, on July 14, 2010, CPS counsel sent a letter offering terms for

settlement. The letter noted that the District would be funding the private evaluations that were completed and submitted for C.W. The letter also stated that the District agreed to place C.W. at either Acacia Academy or The Cove School (Parent's choice), including transportation and ESY, for the 2010-11 school year. Finally, the letter stated that the District agreed to maintain C.W.'s placement at either Acacia or Cove for two additional school years (2011-12 and 2012-13 school years), including transportation and ESY. After consulting with C.W.'s mother, Plaintiffs' counsel declined to accept the settlement offer, but proposed a counter-offer. However, the parties could not agree on terms for settlement and proceeded to a hearing.

On July 26, 2010, the due process hearing began and continued over six days before an independent hearing officer (IHO) appointed by the Illinois State Board of Education. Following the hearing, the IHO issued a decision and order on August 23, 2010. In that order, the IHO concluded that CPS denied C.W. a free and appropriate public education. The decision stated that, "[b]ased upon the testimony and evidence presented at Hearing, it is the opinion of this Hearing Officer that the Parent has successfully sustained its burden with respect to each and every issue raised in its initial Due Process Complaint." The hearing officer ordered the following relief:

1. The District is to place the student <u>immediately</u> at the Cove School and to provide transportation as the Student requires this LRE setting in order to benefit from a public education. As per Dr. Sover's testimony at Hearing, Cove's starting date begins on August 25, 2010 therefore, placement and related transportation services must occur as soon as practicable but not less than seven (7) days from the date of this Order.
2. The District was previously Ordered to fund the Parent's IEEs on June 19, 2010.
    (a) The District is to reimburse Dr. Jansson for her evaluation and any other independent evaluators whose reimbursement is outstanding within 30 days of this Order.
3. A Behavior Assessment is Ordered completed by an independent evaluator at District expense upon the Parent's submission of 3 names for the District to choose the evaluator. The assessment must be completed

within 45 days of this Order. Upon submission of the requisite billing documents required by the District, the District shall reimburse the independent evaluator within 30 days of completion of the independent evaluation or receipt of the independent evaluators billing documents whichever occurs first.

4. A Health/Nursing evaluations is Ordered to be completed by an independent evaluator at District expense upon the Parent's submission of 3 names for the District to choose the evaluator. The assessment must be completed within 45 days of this Order. Upon submission of the requisite billing documents required by the District, the District shall reimburse the independent evaluator within 30 days of completion of the independent evaluation or receipt of the independent evaluators billing documents whichever occurs first.

5. The District is to provide all of the Student's records maintained by the District regardless of the form and including, but not limited to, all IEP report cards, 2009-10 progress reports, emails from staff, sign in sheets for student records, etc. within 45 days of order.

6. The District is to convene an IEP at the Cove School to develop an appropriate IEP for the Student utilizing the Parent's obtained IEEs and any District evaluation results. The following must be included:

    (1) The District shall review all evaluation results and recommendations and have appropriate staff in attendance at the IEP meeting;

    (2) The District shall develop an IEP with individualized and measurable goals/objectives and accurate present levels of performance based upon the Student's eligibility and identified educational needs including appropriate modifications/accommodations;

    (3) The District shall identity all direct and related services based on scientific researched based evidence including, but not limited to:
        (a) psychological or social work services individual and group (30-60 mpw),
        (b) speech/language (60-90 mpw) direct services.
        (c) CAPD (auditory processing) remediation and interventions (30 mpw 3 times a week coordinated with after school program);
        (d) OT direct services (40 mpw direct and 30 mpm consult).

    (4) The District shall provide appropriate assistive technology per Dr. Marsden-Johnson' recommendations (PO 432-Lexia and Earobics; PD 433-So10 6 program downloaded on lap top) including classroom implementation and training to student, parents and staff as required. A lap top computer shall be provided the student for school work to be performed at school and at home.

    (5) The District shall provide compensatory services as stated in Paragraph No.7 below;

(6) The District shall identify the Cove School placement as the LRE as a separate day school. The Cove School can provide a program that can immediately begin and includes such services as a specialized intensive private LD program at the for children with severe learning disabilities; dyslexia/language disorders that has appropriate methodology based scientific, research based evidence such as Orton Gillingham, Wilson or other multi-sensory, sequential systematic intensive reading program.
7. The District is to provide compensatory services for its failure to provide an appropriate evaluation and IEPs including appropriate placement in since February 2008. The compensatory services shall include:
(1) 1:1 tutoring services beyond the regular school day by a certified special education teacher trained in scientific research based interventions for non-readers at Cove School for the next two school years including ESY 2011 and 2012, the period determined to be that which the Student was denied FAPE for 60 minutes per session, twice a week. including transportation;
(2) 1:1 speech language services beyond the regular school day by a certified speech pathologist 60 mpw, I time at Cove School for the next two school years including ESY 2011 and 2012, including transportation;
(3) Dr. Ferre recommended compensatory services for the student to address auditory processing: direct individualized therapy; 30 minutes 3 times a week; computer assisted would be after school day and 90 minutes direct during and after school day; combination of during and after school.
(4) Additional assistive technology to assist the student in all academic areas placed on a lap top computer with appropriate program interventions to enable the student to complete homework (Earobics, Lexia, Solo 6·Write:OutLoud, Co-Writer, Draft Builder, Kurzweil for Windows (and scanner) and Start to Finish books or other such type of books) at district expense including lap top; Dr. Ferre, Dr. Marsden-Johnson, Dr. Jansson and Ms. Block all recommended a lap top computer; and,
(5) The District shall reimburse the parent. upon proper submission of invoices from the providers, the actual out of pocket costs including transportation costs and preparation for testimony, the Parent may have incurred for the following evaluators for their time that each evaluator can document that directly related to the evidence and testimony provided at hearing that was completed between the date of filing the parent's DPCN and the date of testimony including: Dr. Jansson, Dr. Janet Mardsen-Johnson, Dr. Ferre, and Ms. Block.

5

The IHO ordered the District to submit proof of compliance within 45 days of receipt of the order.

On September 1, 2010, in response to a request from CPS for clarification of the initial decision, the hearing officer issued an amendment to his order. In his amended order, the hearing officer affirmed his determination that "the District shall identify the Cove School placement as the LRE as a separate day school."[1] The Cove School is a private therapeutic day school. At the time of the hearing, the school had 135 students in grades K through 12, with 84 staff. Each classroom has 8-10 students with a certified teacher and a teaching assistant.

On January 3, 2011, Plaintiffs through their attorneys submitted a claim for attorney fees to Defendant CPS, claiming $112,319.77 for representation in the due process hearing through January 3, 2011. In the Chicago metropolitan area, the following range of hourly rates prevail for attorneys representing parents in special education matters: (1) $350-425 an hour for attorneys with 20 or more years of experience; (2) $295-350 an hour for attorneys with 11 to 19 years of experience; (3) $270-295 an hour for attorneys with 7 to 10 years of experience; (4) $240-270 an hour for attorneys with 3 to 7 years of experience; (5) $185-200 an hour for attorneys with 1 to 2 years of experience; and (6) $85-125 an hour for law clerks and paralegals. Sara E. Mauk has been licensed to practice law since 2005. Peter Godina has more than 6 years experience as a legal assistant, including work as a legal assistant at the firm of Mauk & O'Connor, LLP for more than four years. Plaintiffs' co-counsel, Sarah O'Connor, has been licensed to practice law since 2002. Ms. O'Connor has been a staff attorney with the nonprofit organization Health & Disability Advocates (HDA) working for the Medical Legal-Partnership for Children since August 2007. Prior to that, she worked in a private law firm specializing in immigration matters. Plaintiffs' co-counsel, Elizabeth Walker, has been licensed to practice law

---

[1] "LRE" refers to least restrictive environment.

since 2005. Ms. Walker has been a staff attorney with the nonprofit organization Health & Disability Advocates (HDA) working for the Medical Legal-Partnership for Children since August 2007. Prior to joining HDA, Ms. Walker was a staff attorney with the Legal Assistance Foundation of Chicago. Plaintiffs have incurred attorney fees for monitoring compliance with the IHO decision, requesting enforcement action by the Illinois State Board of Education, and in attending an IEP meeting convened pursuant to the hearing officer's decision.

In its statement of additional facts, Defendant points out several billing entries that it disputes. For instance, Defendant notes that Sarah O'Connor did not prepare any witness outlines for the due process hearing, and did not conduct any direct or cross examinations at the due process hearing or present any arguments, yet she billed 8.75 hours ($2,187.50) for attending the due process hearing on July 26, 2010, 8 hours ($2000.00) each day for attending the due process hearing on July 27 and 28, 2010, and 8.5 hours ($2,125.00) for attending the due process hearing on July 30, 2010.[2] Prior to the due process hearing, she billed 5.75 hours ($1,437.50) and Elizabeth Walker billed 9.81 hours ($2,207.25). Defendant refers to these billings as time spent "shadowing" co-counsel.

Defendant also argues that Veena Gursahani billed 11.30 hours ($2,300.00) for performing clerical/paralegal tasks. Plaintiffs deny that the tasks listed are "clerical/ paralegal," except for the entry of 7/24/10, which Plaintiffs agree should be billed at the paralegal rate of $110.00. For the remainder of the tasks, Plaintiffs do not explain why each task is not clerical, but rather refer the Court to two charts and ask the Court to sift through all of the entries.

---

[2] Sara Mauk was the lead counsel at the due process hearing and conducted direct and cross examinations of witnesses on July 26, 27, 29 and 30, 2010. Veena Gursahani also attended the due process hearing on July 26, 27, 28, and 30, 2010, and conducted direct and cross examinations of witnesses.

7

Defendant points out that Sara Mauk billed 8.25 hours ($1,980) researching, drafting and reviewing the due process complaint. Veena Gursahani billed 12.80 hours ($2,560.00) researching, drafting, and reviewing the due process complaint, 3.5 hours of which were billed for a meeting with the client to discuss factual and legal issues in a draft due process complaint. And Elizabeth Walker billed 4.6 hours ($1035.00) drafting and reviewing the due process complaint, 3.5 hours of which were spent with Veena Gurshani meeting with the client to discuss legal and factual issues in the draft due process complaint. Sara Mauk billed 11.48 hours ($2,755.20) to attend the meetings and telephone conferences with co-counsel. Veena Gursahani billed 15.75 hours ($3,152.00) to attend meetings and telephone conferences with co-counsel. Pointing to the entries set forth above, Defendant maintains that Plaintiffs' claim for attorneys' fees is not reasonable under the IDEA and that Plaintiffs should be awarded only $93,812.52.

In response to Defendant's objections, Plaintiffs, in their reply brief, indicate that they are withdrawing or adjusting certain billing and now request a fee of no less than $103,737.27.

## II. Legal Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists if "the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

## III. Analysis

The Individuals with Disabilities Education Act (IDEA) contains a fee-shifting provision whereby "the court, in its discretion, may award reasonable attorney's fees as part of the costs to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B). This Court has jurisdiction to adjudicate the fee petition based on 20 U.S.C. § 1415(i)(3)(A). Federal courts have jurisdiction over independent attorneys' fees suits resulting from an IDEA administrative proceeding. *Bd. of Educ. Of Oak Park v. Nathan R.*, 199 F.3d 377, 380-81 (7th Cir. 2000); *John M. v. Board of Educ. of City of Chicago, Dist. 299*, 612 F. Supp. 2d 981, 990 (N.D. Ill. 2009)

### A. Prevailing Party

To determine whether the parents are entitled to attorneys' fees, the Court must first ask whether they prevailed. "The term 'prevailing party' under 20 U.S.C. § 1415(e)(4)(b) has the same meaning as the phrase does in 42 U.S.C. § 1988." *Bd. of Educ. of Oak Park v. Nathan R.*,

199 F.3d 377, 382 (7th Cir. 2000); see also *Jodlowski v. Valley View Cmty. Unit Sch. Dist.,* 109 F.3d 1250, 1253 n. 2 (7th Cir. 1997) ("[C]ases dealing with 42 U.S.C. § 1988, which provides for attorney's fees for prevailing parties in civil rights cases * * * nevertheless guide our interpretation of the meaning of 'prevailing party' under the IDEA"). In order to qualify as a "prevailing party" for purposes of the IDEA, a party must obtain "actual relief on the merits of a claim that materially alters the legal relationship between the parties * * * in a way that directly benefits [that party]." *Linda T. v. Rice Lake Area Sch. Dist.,* 417 F.3d 704, 707-08 (7th Cir. 2005) (internal citations omitted); see also *Farrar v. Hobby,* 506 U.S. 103, 111-12, 113 (1992); *T.D. v. LaGrange School Dist. No. 102,* 349 F.3d 469, 479 (7th Cir. 2003) (under the IDEA, plaintiffs may be considered prevailing parties if "they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.").

In *Buckhannon Board and Care Home, Inc., v. West Va. Dept. of Health and Human Resources*, the Supreme Court held that a party cannot be a prevailing party without a court ordered change on the defendant's behavior, rejecting the catalyst theory as a basis for recovery of attorneys' fees.[3] 532 U.S. 598, 610 (2001). Where a party files a suit or takes other action that is a catalyst for a voluntary change by the opposing party, he is not a prevailing party even though his actions achieved his goal. *Id.* at 605. "A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the

---

[3] *Buckhannon* arose after an operator of assisted living homes failed a state fire inspection because its residents were not capable of "self preservation." *Id.* at 600. The operator received cease and desist orders, then subsequently filed suit in the district court. *Id.* at 600-01. The suit alleged that the "self preservation" requirement violated the Fair Housing Amendments Act and the Americans with Disabilities Act. *Id.* at 601. Some time after the suit was filed, the state legislature eliminated the requirement from the statute and the case was dismissed as moot. *Id.* The plaintiff sought attorneys' fees under the catalyst theory which indicates that "a plaintiff is a prevailing party if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Id.* (internal quotation omitted).

necessary judicial *imprimatur* on the change." *Id.* Thus, judgments on the merits and court-ordered consent decrees are the primary basis for prevailing party status. *Id.* at 604. The Seventh Circuit has applied the holding in Buckhannon to IDEA cases since 2003. See *Bingham v. New Berlin Sch. Dist.*, 550 F.3d 601, 602-03 (7th Cir. 2008); *T.D. v. LaGrange School Dist. No. 102*, 349 F.3d 469, 478 (7th Cir. 2003) (noting that Supreme Court in Buckhannon "left the clear impression that private settlements do not involve sufficient judicial sanction to confer "prevailing party" status).

Here, the hearing officer's decision provided Plaintiffs with substantial relief. IHO Blackburn ordered Defendant to place C.W. at the Cove School, to pay for certain independent educational evaluations, and to provide certain compensatory education services. This relief is enough to meet the threshold of prevailing party status. See *Farrar v. Hobby,* 506 U.S. 103, 111 (1992); *Koswenda,* 227 F. Supp. 2d at 990 (noting *Farrar* held that prevailing party status does not turn on the magnitude of the relief obtained, as Farrar recovered only one dollar when he asked for $ 17 million); *John M. v. Board of Educ.*, 612 F. Supp. 2d 981, 991-92 (N.D. Ill. 2009). Furthermore, Defendant does not challenge Plaintiffs status as prevailing parties. Therefore, Plaintiffs qualify as prevailing parties under the IDEA. See *Linda T.,* 417 F.3d at 707-08; see also *Ryan M. v. Board of Educ. of City of Chicago, Dist. 299*, 731 F. Supp. 2d 776, 787-88 (N.D. Ill. 2010).

**B.     Reasonableness of Fees**

Having determined that Plaintiffs are "prevailing parties," the Court now turns to the analysis of determining a reasonable fee. See *Anderson v. AB Painting & Sandblasting, Inc.*, 578 F.3d 542, 544-45 (7th Cir. 2009) ("If a party prevails, and the damages are not nominal, then Congress has already determined that the claim was worth bringing" and the Court then "must

limit itself to determining whether the hours spent were a reasonable means to that necessary end"). As the Seventh Circuit has summarized, "[a]lthough there is no precise formula for determining a reasonable fee, the district court generally begins by calculating the lodestar – the attorney's reasonable hourly rate multiplied by the number of hours reasonably expended." See *Schlacher v. Law Offices of Phillip J. Rotche & Assoc., P.C.*, 574 F.3d 852, 856 (7th Cir. 2009) (citing *Hensley*, 461 U.S. at 433-37). Before determining the hours and rates in this case, however, the Court notes a few basic principles that apply in generating the lodestar in a fee-shifting case.

First, it is appropriate to consider the litigation as a whole, rather than viewing the specific claims atomistically, if "the plaintiff's claims of relief * * * involve a common core of facts or [are] based on related legal theories," such that "much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988). Second, a fee award "should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435; see also *Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 873 (7th Cir. 1995). As the court of appeals has stated, "*Hensley* makes clear that when claims are interrelated, as is often the case in civil rights litigation, time spent pursuant to an unsuccessful claim may be compensable if it also contributed to the success of other claims." *Jaffee v. Redmond*, 142 F.3d 409, 413 (7th Cir. 1998). And finally, the fact that the amount yielded by computing the "lodestar" exceeds the amount of the judgment does not necessarily indicate that the prevailing party has made an unreasonable fee request. As the Seventh Circuit remarked recently, "[b]ecause Congress wants even small violations of certain laws to be checked through private litigation and because litigation is expensive, it is no surprise that the

cost to pursue a contested claim will often exceed the amount in controversy." *Anderson v. AB Painting and Sandblasting Inc.*, 578 F.3d 542, 545 (7th Cir. 2009).

In the instant case, Plaintiffs have submitted fee petitions which offer detailed information regarding activities and time allocated in representation. Plaintiffs retained Sara E. Mauk, an attorney who has been licensed to practice law for more than 5 years, to represent them regarding special education services. Co-counsel were three attorneys from Health & Disability Advocates, Inc., Veena Gursahani, Elizabeth Walker and Sarah O'Connor. Ms. Gursahani initially was supervised by Ms. Walker, who went on maternity leave during the pendency of this proceeding, and then by Ms. O'Connor. Peter J. Godina, a legal assistant employed by the firm of Mauk & O'Connor, LLP, has been employed in that capacity for more than four years. Hourly rates charged by the firm of Mauk & O'Connor LLP have been accepted in attorney fee litigation involving Defendant Board of Education. See *John M. v. Bd. of Educ.,* 612 F. Supp. 2d 981 (N.D. Ill. 2009); *Benito M. v. Bd. of Educ.*, 544 F. Supp. 2d 713 (N.D. Ill. 2008). Furthermore, in *T.D. v. LaGrange*, the court noted with approval an hourly rate of $90 for paralegal work completed prior to 1998. 222 F. Supp. 2d 1062, 1065 (N.D. Ill. 2002). In addition, affidavits from two attorneys practicing in the area of special education attest to the reasonableness of the hourly rates set by Plaintiffs' counsel. Defendant does not challenge the rates charged by the attorneys.

The majority of the fees requested by Plaintiffs are reasonable. However, a portion of the fees requested do appear excessive or unreasonable. For instance, at the due process hearing, Plaintiffs billed time for three attorneys—Mauk, Gursahani, and O'Connor. While O'Connor attended four days of the hearing, she did not present any witnesses, nor did she present any arguments on the record. She billed $8,312.50 to attend those four days. Although Gursahani is

a less experienced attorney than O'Connor, Mauk was identified as lead counsel and was present throughout the whole hearing to supervise Gursahani. Furthermore, O'Connor's entries prior to the hearing reflect that she did not review any documents or prepare any witness outlines for the hearing. Perhaps anticipating the Court's response, Plaintiffs in their reply brief withdrew their claim for fees based on O'Connor's presence at the hearing. Based on O'Connor's lack of participation in the hearing, Plaintiffs' fee petition will be reduced by $8,312.50. See *Schlacher*, 574 F.3d at 858 (encouraging courts to "scrutinize fee petitions for duplicative billing when multiple lawyers seek fees" and to disallow this time).

Defendant's also maintain that the time billed for attorneys Walker and O'Connor to "shadow" attorney Gursahani is excessive and duplicative and thus the amount billed should be reduced. However, Defendant merely states that Walker and O'Connor were "shadowing" Gursahani and makes no further argument. And in fact, the billing invoices do not reflect that the time was spent "shadowing," but rather identify the specific tasks either lawyer undertook. Defendant has failed to make any argument as to why this time was shadowing, as opposed to active participation in the strategy of the case (as the billing records reflect), and therefore Plaintiffs' fee petition will not be reduced on this basis.

Defendant also contends that four attorneys were billing time for the same meetings and telephone conferences, yet the record reveals that Ms. O'Connor was involved only during the times that Ms. Walker was on leave. In addition, billings involving all three attorneys were uniformly for concrete and brief discussions of case related issues, either among themselves or with the hearing officer. Because the majority of these meetings appear to have involved coordinating activities and discussing strategy, and were by and large kept very brief, the Court finds that fees for this time are reasonable. See, *e.g.*, *Mostly Memories, Inc. v. For Your Ease*

*Only, Inc*., 594 F. Supp. 2d 931, 936 (N.D. Ill. 2009) ("Time spent discussing issues with other attorneys is a basic element of the practice of law and is compensable, if reasonable, in a fee petition."); see also *Berberena v. Coler,* 753 F.2d 629, 633 (7th Cir. 1985) (awarding compensation for four attorneys working on case, including time they spent strategizing and discussing the case); *Gautreaux v. Chicago Housing Authority,* 491 F.3d 649, 661 (7th Cir. 2007) (time spent on "intra-team communications" was compensable since use of more than one lawyer is a "common practice, primarily because it often results in a more efficient distribution of work"). Here, Plaintiffs have identified the subject matter of their attorneys' discussions and the billing entries are clear, and thus the Court believes the amount of time recorded was "reasonably expended." *Tchemkou v. Mukasey*, 517 F.3d 506, 511-12 (7th Cir. 2008) ("Talking through a set of authorities or seeking advice on a vexing problem is often significantly more efficient than one attorney's trying to wade through the issue alone.").

Defendant also contends that certain entries represent clerical or paralegal tasks that should not be reimbursed as attorneys' fees. For instance, Defendant maintains that work on witness and document lists does not reflect substantive legal work. However, Plaintiffs have explained that the majority of the work regarding addition or exclusion of witnesses and documents from the proffer to the hearing officer was akin to document review in preparation for the due process hearing, or, as this Court sees it, akin to a pretrial order in preparation for trial. This sort of work is compensable at an attorney rate. Plaintiffs do concede that one entry—for July 24, 2010 (three hours for organizing additional hearing books)—should be billed at a paralegal rate of $110/hour, leading to a reduction of $270.00, which the Court will take into account.

Defendant also objects to time expended in preparing the due process complaint. The due process complaint consists of a 12 page, single-spaced letter with 67 pages of exhibits. A total of 25.65 hours was expended by three attorneys related to the due process complaint, 7.0 hours of which consisted of two attorneys who met with the Plaintiffs for 3.5 hours each to discuss factual and legal issues in a draft due process complaint. Although "[a]n attorney's hours are subject to the scrutiny of the court and unreasonable hours should not be compensated," a court should not "eyeball the fee request and cut it down by an arbitrary percentage because it seem[s] excessive." *People Who Care v. Rockford Bd. of Educ. Sch. Dist. No. 205*, 90 F.3d 1307, 1314 (7th Cir. 1996) (internal citation omitted). However, as Defendant points out, Plaintiffs' counsel has filed numerous due process complaints and this particular complaint is very similar to complaints that the Court has seen in similar cases. Plus, dedicating the time of three attorneys to the research and drafting of this complaint seems excessive, particularly in light of similar cases in which attorneys took substantially less time to research and draft a complaint. See, *e.g.*, *Schlacher*, 574 F.3d at 858 (encouraging courts to "scrutinize fee petitions for duplicative billing when multiple lawyers seek fees" and to disallow this time); *Ryan M.*, 731 F. Supp. 2d at 790 (finding that 14 hours was a reasonable amount of time for the preparation of a complaint). Therefore, the Court reduces the amount of time spent drafting the complaint by 50 percent, resulting in a decrease to Plaintiffs' fee petition of $2,787.50

Defendant objects to nine hours of time for drafting a motion for an interim order regarding independent educational evaluations ("IEEs"). The motion for an IEE also included 69 pages of exhibits, and the hearing officer's decision on the motion is six pages in length. The hearing officer granted Plaintiffs' motion and ordered CPS to pay for private evaluations of C.W. in areas of psychological evaluation, speech/language and assistive technology assessments,

occupational therapy assessment, and screening for central auditory processing disorder). Defendant fails to articulate a basis for the reduction, other than to state a conclusion that the time should be reduced by 50%. Given the importance and complexity of the issues reflected in the motion, together with the results obtained, the Court finds the 8.5 total attorney hours expended to be reasonable.

Defendant objects to billing entries in February 2010 concerning preparation of a dissent to an IEP developed in January 2010. Defendant contends, correctly, that 20 U.S.C. §1415(i)((3)(D)(ii) prohibits an award of attorney fees for attending an IEP meeting unless the meeting is the result of judicial or administrative hearing orders. Plaintiffs' counsel did not bill for attending an IEP meeting in January. However, the IEP produced by that meeting became an important school record for the case, and preparation of a dissent to an IEP is a legitimate part of the advocacy work of counsel. Billing for preparing a dissent to an IEP was approved over objection from the CPS in *Ryan M. v. Board of Education* (see 731 F. Supp. 2d at 789), and Defendant offers no authority to support its view that the hours spent preparing a dissent should not be approved.

Finally, Defendant objects to a billing by attorney Mauk on August 13, 2010, which billed for "preparation after the 1st day of the hearing" even though the hearing began in July. As explained in Plaintiffs' response and the Affidavit of Sara E. Mauk, the entry has two typos: first the entry should have been dated 8/12/10 rather than the following day, and second the entry should have referred to the "last" day of the hearing rather than the "1st" day of the hearing. Having reviewed the corrected entry, the Court finds that time to have been reasonably expended.

### C. Prejudgment Interest

Plaintiffs seek prejudgment interest on the Court's award of attorneys' fees. The granting of prejudgment interest is left to the sound discretion of the district court. *United States v. Bd. of Educ. of Consol. High Sch. Dist. 230, Palos Hills, Ill.,* 983 F.2d 790, 799 (7th Cir. 1993). In cases of violations of federal law, prejudgment interest "should be *presumptively available*" because "[w]ithout it, compensation is incomplete and the defendant has an incentive to delay." *Id.* (quoting *Gorenstein Enter., Inc. v. Quality Care–USA, Inc.,* 874 F.2d 431, 436 (7th Cir. 1989)). Based on this presumption, courts may award prejudgment interest in cases for attorneys' fees under the IDEA. See *Christopher C. v. Bd. of Educ. City of Chi.,* 2010 WL 3420266, at *4 (N.D. Ill. Aug. 26, 2010) (listing cases). If awarded, prejudgment interest is calculated using the prime rate for the appropriate period. See *First Nat'l Bank of Chi. v. Standard Bank & Trust,* 172 F.3d 472, 480 (7th Cir. 1999).

"[P]rejudgment interest typically accrues from the date of loss or the date on which the claim accrued" in order to "put a party in the position that it would have been in had it been paid immediately." *Am. Nat. Fire Ins. Co. v. Yellow Freight Sys., Inc.,* 325 F.3d 924, 935 (7th Cir. 2003) (citations omitted). District courts interpreting this language in the context of fee awards under the IDEA have generally resolved the accrual issue two ways. First, some courts have used the date on which the hearing officer issued the pertinent order or decision as the accrual date for the purposes of prejudgment interest. See *T.P. ex rel. Kimbrely R. v. City of Chi. Pub. Sch. Dist. 299,* 2011 WL 1197353, at *12 (N.D. Ill. Mar. 29, 2011); *Ryan M.,* 731 F. Supp. 2d at 796. Alternatively, other courts have used the date the plaintiffs submitted their fee petition to the defendant school board. See *Christopher C.,* 2010 WL 3420266, at *4–5; *Stephanie J. v. Bd. of Educ. of City of Chi., Dist. 299,* 2010 WL 3070461, at *5 (N.D. Ill. July 30, 2010). This

discrepancy can be explained by the discretionary nature of prejudgment interest awards; the chosen dates reflect the specific facts and circumstances of each case.

Here, the District contends that, if the Court determines that prejudgment interest is appropriate, the Court should use the date of 30 days after the filing of the fee petition with the District. Plaintiffs acknowledge that the date of accrual rests with the discretion of the Court and ask that the date be no later than 30 days after the filing of the fee petition. This date seems appropriate because the Seventh Circuit has emphasized that because "the purpose of a fee award is to reimburse the plaintiff for the cost he would reasonably incur if he purchased legal assistance in the market * * * the proper approach to the calculation of interest requires consideration of prevailing practices in the legal-services market." *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205,* 272 F.3d 936, 938 (7th Cir. 2001) (citations omitted). The Court believes it is reasonable for the District to have a period of time to review Plaintiffs' fee petitions, like a client would have, without being charged interest. Accordingly, Plaintiffs are entitled to prejudgment interest on the reduced amount of their fees beginning thirty days after the submission of their fee petitions to the District. See also *Judah M. v. Board of Educ. of City of Chicago, Dist. 299,* 798 F. Supp. 2d 942, 953-54 (N.D. Ill. 2011).

## III. Conclusion

For the reasons set forth in this opinion, the Court grants in part and denies in part Plaintiffs' motion for summary judgment [17]. The Court finds that Plaintiffs are prevailing parties and that they are entitled to reasonable attorneys' fees and costs; however, the Court also finds that a reduction in the amount of fees requested is appropriate, based on the specific deductions set forth in the opinion. The Clerk of the Court shall enter judgment in favor of Plaintiffs and against Defendant District. Taking the deductions into consideration, Plaintiffs are

entitled to recover attorneys' fees and costs in the amount of $100,949.77 plus prejudgment interest as set forth above.[4]

Dated: February 1, 2012

                                                    Robert M. Dow, Jr.
                                                    United States District Judge

---

[4] In their memorandum, Plaintiffs also request that the Court award attorneys' fees for the present suit. This request will only be considered upon the filing of a separate motion with the necessary supporting materials.